# United States Court of Appeals

## For the First Circuit

No. 05-1743

FERNANDO AGUIAR-CARRASQUILLO,
MARÍA REYES-GARCÍA,

Plaintiffs, Appellants,

v.

HON. JUAN AGOSTO-ALICEA, in his personal capacity and in his
official capacity as PRESIDENT OF THE GOVERNMENT DEVELOPMENT
BANK (GDB); GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Francisco R. González, with whom F.R. González Law Office was
on brief, for appellants.
Edwin J. Seda-Fernández, with whom Mariel Y. Haack, Adsuar
Muñiz Goyco & Besosa, P.S.C., Rafael Escalera-Rodríguez, Michelle
Taveira-Tirado, and Reichard & Escalera were on brief, for
appellees.

April 12, 2006

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiffs-Appellants Fernando Aguiar-Carrasquillo ("Aguiar") and María Reyes-García ("Reyes") allege several different causes of action arising from political discrimination against their employers, defendants Government Development Bank ("GDB") and Juan Agosto-Alicea ("Agosto"). Plaintiffs are members of the New Progressive Party ("NPP") while Agosto is a member of the Popular Democratic Party ("PDP") that came to power in Puerto Rico after its 2000 electoral victory.

On July 15, 2003, defendants filed a motion for summary judgment. On July 21, 2003, plaintiffs requested a thirty-day extension to file their opposition to defendants' motion for summary judgment because they claimed it was essential for their opposition to depose Alba Caballero ("Caballero").[1] The district court granted plaintiffs' request for an extension until August 21, 2003, but warned that "ABSOLUTELY NO FURTHER EXTENSIONS OF TIME SHALL BE GRANTED." (emphasis in the original). Nevertheless, plaintiffs did not timely file their opposition to defendants' summary judgment motion.

Four months later, on November 25, 2003, defendants filed a motion requesting that the court deem unopposed their statements of uncontested material facts and grant summary judgment in their favor. On December 24, 2003, plaintiffs opposed defendants' motion

---

[1] Caballero was the external investigator hired by the GDB in 2001 to review all appointments and personnel transactions undertaken between July and December 2000.

-2-

for the admission of their statement of facts as uncontroverted, and requested a thirty-day extension to file their opposition to defendants' summary judgment motion. On March 12, 2004, the court entered its Opinion and Order, accepting defendants' unopposed statement of facts and granting defendants' unopposed motion for summary judgment. On March 23, plaintiffs filed a motion for reconsideration on grounds that defendants had failed to provide certain "essential documents." On March 25, plaintiffs filed their first motion requesting that the court order defendants to produce those documents. Finally, on April 14, 2004, more than one month after the entry of judgment, plaintiffs filed their opposition to summary judgment. On March 23, 2005, the district court denied plaintiffs' motion for reconsideration. Plaintiffs now appeal.

## I.  Uncontested Facts

Agosto became GDB President on January 2, 2001, at which time he extended all probationary periods then in effect and ordered an investigation -- to be conducted by Caballero -- of all recent appointments, including those of plaintiffs, to determine whether any violated the applicable law and regulations. Both plaintiffs allege discriminatory adverse employment actions resulting from this investigation.

### A.  Plaintiff Aguiar

On April 7, 2000, Aguiar was appointed Executive Director of the Tourism Development Fund, a trust position,[2] with a salary of $77,200.  That salary was increased to $82,227 on July 12, 2000. In August 2000, the GDB Human Resources Office prepared an announcement for the position of Assistant Director of Private Finance.  The requirements for the position included:

> (a) Bachelor's Degree in Accounting or Finance from an accredited university or college; Six years of experience in loan analysis and administration, two of those years in personnel supervision functions; Bilingual (Spanish and English); or in its place;

> (b) Master's Degree in Accounting or Finance from an accredited university or college; Five years of experience in loan analysis and administration, two of those years in personnel supervision; Bilingual (Spanish and English).

Jaime López ("López"), Director of Private Finance at GDB, reviewed these requirements before the announcement was published, met with Aguiar to discuss his eligibility for the position, and subsequently eliminated the education prerequisites and the requirements for experience in loan analysis and administration. In their stead, he established a much lower threshold of

---

[2]  Puerto Rico law distinguishes between "career" employees and "trust" employees.  Career employees are permanent and  "'may only be removed from their positions for just cause after due filing of charges.'"  <u>Figueroa-Serrano</u> v. <u>Ramos-Alverio</u>, 221 F.3d 1, 3 n.1 (1st Cir. 2000) (quoting 21 P.R. Laws Ann. § 4554(b)).  By contrast, trust employees "shall be of free selection and removal," i.e., removable with or without cause.  3 P.R. Laws Ann. § 1350.

-4-

qualifications for the job -- namely, six years of experience in analysis and administration of private sector financing, two of which must have entailed the planning and coordination of financing services including personnel supervision. Despite the fact that GDB had classified the position of Assistant Director of Private Finance as one that categorically required a degree in accounting or finance, the announcement was published with no such requirements. Aguiar does not have a degree in accounting or finance and would not have been eligible for the position if López had not changed the requirements.

Aguiar applied for the position of Assistant Director of Private Finance and was appointed, effective September 7, 2000, subject to the standard six month probationary period. At that time, Aguiar's qualifications for the position included four years and eleven months' experience in analysis and administration of private sector financing, two of which related to planning and coordination of financing services. When he was certified as eligible for the position, one additional year of employment experience -- during which time he served as an administrative officer -- was counted toward the requirement of six years' experience in the analysis and administration of private sector financing, despite the fact that his duties as an administrative officer did not include those activities.

The position of Assistant Director of Private Finance was a permanent career position, with an annual salary of $58,900. Aguiar continued to occupy the position of Executive Director of the Tourism Development Fund, for which he received a "differential compensation" of $23,100 annually. The sum of his salary and the differential was $82,230, which is the same salary that he had received as Executive Director of the Tourism Development Fund prior to his promotion. According to GDB Personnel Regulations, a differential can only be authorized, with written justification, when "the geographic location, the extraordinary job conditions or the extraordinary difficulties regarding recruitment or retention of personnel in certain positions justify the use of additional incentives to the ordinary salary." There is no evidence on the record of a valid justification for the differential.

On June 6, 2001, Agosto notified Aguiar that serious irregularities had been identified with regard to his appointment as Assistant Director of Private Finance. These included a) the impermissible elimination of the educational prerequisite from the published requirements for the position; b) the fact that Aguiar did not have the six years' required relevant experience; and c) the fact that Aguiar simultaneously occupied two positions at GDB. After an administrative hearing during which Aguiar had the opportunity to present evidence, his appointment was declared null and void, and he was reinstated to a previous position --

-6-

Administrative and Finance Officer at the Tourism Development Fund, effective July 17, 2001.

### B. Plaintiff Reyes

Reyes applied for the position of Senior Account Executive at GDB on August 25, 2000. The requirements of the position included "two years of experience in financing, investment, or professional accounting functions," one of which must have entailed credit analysis or the administration of financing accounts or investment portfolios. Reyes's resumé did not initially list any duties related to financial analysis, and she was asked to submit a new certification. Her new certification, listing financial analysis responsibilities, was submitted on September 5, 2000. On that date she was certified as eligible for the position and appointed to the position of Senior Account Executive, effective September 7, 2000, subject to a six-month probationary period.

Reyes was appointed after ten other candidates had previously been certified as eligible, despite the fact that GDB Personnel Regulations stipulate that "[t]he eligibles included in each certification must be the first ten (10) that appear in the register, willing to accept the appointment under the conditions stipulated." Reyes's salary was set at $40,000, more than the minimum salary for the position, despite the fact that GDB Personnel Regulations provide that "every person will receive as

salary for their services the minimum rate established for the class to which their position is assigned." Only where there is "difficulty in recruitment, extraordinary qualifications of the candidate, or needs of the service," may an employee be awarded a salary higher than the minimum. The Director of Human Resources stated that Reyes had "vast experience" in the field of financial analysis, despite the fact that her credentials do not appear to support such an assessment, and Reyes claims that she had "extraordinary qualifications" because she was bilingual, organized, met her deadlines, and stayed at a previous post for seven years.

Reyes's probationary period was extended when Agosto took office as GDB President, and Caballero found several irregularities upon review of her appointment. Among them were a) the fact that, in violation of GDB regulations, Reyes was certified as eligible for the position after ten other candidates had been certified; and b) the fact that a higher salary was recommended without a valid justification. On June 6, 2001, Agosto notified Reyes of the irregularities, and after an informal hearing at which she had the opportunity to present evidence, Reyes was terminated, effective July 17, 2001.

## II. Analysis

### A. Noncompliant Brief

As an initial matter, defendants claim that plaintiffs' brief on appeal to this court fails to comply with the local rules adopted by this Circuit.  Specifically, Local Rule 30(d) stipulates that "[t]he court will not receive documents not in the English language unless translations are furnished."  1st Cir. R. 30(d).  Nevertheless, plaintiffs' Appendix contains 57 pages (pp. 335-392) in Spanish, with no accompanying English translation.  In the past, we have refused to consider materials submitted to the court in any language other than English, and we continue to do so.  See, e.g., Ramos-Báez v. Bossolo-López, 240 F.3d 92, 94 (1st Cir. 2001).

However, we do not think the exclusion of these untranslated materials will have any significant effect on the strength of plaintiffs' case because most, if not all, of these appendix pages appear to constitute exhibits to plaintiffs' opposition to summary judgment.  Because the district court granted defendants' summary judgment motion unopposed, we conclude that these exhibits were not relevant to decisionmaking below.  On appeal, "[w]e review only the materials actually relied upon below . . ."  United States v. Robinson, 137 F.3d 652, 653 n.1 (1st Cir. 1998).  Because these exhibits were not considered below, we cannot consider them now.

### B.  Summary Judgment

Plaintiffs do not challenge the district court's determination that defendants' motion for summary judgment was unopposed, or that defendants' factual assertions were uncontroverted, and thus we do not consider those issues. Nevertheless, entry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment. Instead, "the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Mullen v. St. Paul Fire and Marine Ins. Co., 972 F.2d 446, 452 (1st Cir. 1992) (citation and internal quotation marks omitted).  In this appeal, plaintiffs contend that the district court's grant of summary judgment was not legally appropriate.

We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 42 (1st Cir. 2002).  Summary judgment is properly granted if the movant can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is well-settled that "before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of

-10-

law." López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991) (citation and internal quotation marks omitted).

In a political discrimination claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that defendants deprived them of federally protected rights while acting under color of state law. Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). They must further establish that they have engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the adverse employment action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). The burden then shifts to defendants to demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional. Id. at 286-87.

In this inquiry, although we are constrained by the uncontested facts as accepted by the district court, we "construe the record in the light most favorable to" the non-moving party. E.g., Tobin v. Liberty Mut. Ins. Co, 433 F.3d 100, 104 (1st Cir. 2005). There is no doubt that the adverse employment actions in both cases took place immediately after the administration change following the PDP victory in the 2000 elections, when defendant Agosto directed Caballero to conduct an "audit" of all recent employment actions to evaluate their compliance with GDB Personnel

Regulations. Plaintiffs claim that Caballero's audit was "selective" because it only affected NPP members, but this allegation is entirely unsupported and it is, in any event, not persuasive. Even if the personnel actions taken during the relevant period involved NPP members, official review of such employment decisions does not support a claim of discrimination. As we have observed,

> [i]f uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted. It is in the nature of a change in administrations that job actions by the new party in power will have a disparate impact on members of the outgoing party.

Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 140 (1st Cir. 2004). We evaluate each plaintiff's allegations in turn.

Plantiff Aguiar claims that he was reinstated to his previous position because of political discrimination. However, Aguiar is not certain that defendant Agosto was even aware of his political affiliation. In fact, his only specific allegation as to the knowledge of any government official of his political affiliation is that former GDB Vice President Zaida Marrero knew of his political leanings when she hired him for a position with the Municipal Collection Revenue Center (CRIM) several years earlier, before her retirement in 1997. Thus, Aguiar has not demonstrated that political discrimination was a substantial or motivating

factor in his reinstatement to his previous career position. Even if, _arguendo_, he had made such a showing, defendants have alleged facts in support of their _Mt. Healthy_ claim that Aguiar's appointment violated GDB Personnel Regulations, and thus that they would have removed him from the position of Assistant Director of Private Finance regardless of his political affiliation because, among other reasons, he was not qualified for the position. Although Aguiar now claims that the administrative hearing that gave rise to his removal from his position was "pro forma, a sham and a subterfuge," this allegation is conclusory and devoid of any substantiation. As we have repeatedly intoned, "we do not consider conclusory allegations, improbable inferences, and unsupported speculation." _Emmanuel_ v. _Int'l Bhd. of Teamsters, Local Union No. 25_, 426 F.3d 416, 419 (1st Cir. 2005) (citation and internal quotation marks omitted). Aguiar offers nothing more.

Plaintiff Reyes claims that she was terminated because of her political affiliation. However, she admits that she never told anyone at GDB about her political affiliation, claiming only that people "must have known" because of her "relationship" with Aguiar and the fact that she had been employed under the previous administration. Reyes does not elaborate as to the nature of this relationship with her co-plaintiff and so we have no basis upon which to evaluate that argument. Further, we do not find persuasive her claim that the simple fact of her employment prior

to the 2000 election would have been sufficient to put her co-workers and employers on notice of her political inclinations. As plaintiffs point out, they "need not produce direct evidence of discriminatory treatment (a so-called 'smoking gun') to establish a prima facie case of politically discriminatory demotion [or termination]." Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997). Nevertheless, more is required than Reyes's bare allegations in this case. We find that she has not discharged her burden to demonstrate that her political affiliation was a substantial or motivating factor for her termination. However, even if she had made a prima facie case for political discrimination, defendants have presented a legitimate, non-discriminatory explanation for her termination -- namely, that her appointment violated GDB Personnel Regulations.

In addition to their First Amendment claims, both plaintiffs allege violations of their Fourteenth Amendment right to due process. Specifically, Aguiar and Reyes claim deprivation of their property interests in employment without a meaningful hearing. Defendants respond, consistent with the district court's opinion, that because plaintiffs' appointments were made in violation of GDB Personnel Regulations, plaintiffs had no property interests in their positions and thus were not entitled to Fourteenth Amendment protection. The district court correctly disposed of these claims.

It is clear that the Fourteenth Amendment guarantees an informal pre-termination hearing to those with a property interest in their employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). Such property rights are created by "existing rules or understandings that stem from an independent source such as state law." Id. at 538. We have long recognized that "public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void ab initio." Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). Because we find that both plaintiffs' positions were secured in violation of GDB Personnel Regulations, we affirm summary judgment as to their Fourteenth Amendment claims without evaluating the adequacy of their pre-termination hearings.[3]

## C. Motion for Reconsideration

Plaintiffs claim that the district court erred by denying their motion for reconsideration of its judgment granting defendants' unopposed motion for summary judgment. Plaintiffs' argument is based on three subsections of Rule 60(b) of the Federal Rules of Civil Procedure. Subsection (1) provides for relief from

---

[3]    Defendant Agosto also raises qualified immunity as an affirmative defense, but we need not reach this issue because we find that neither plaintiff has made a prima facie case under 42 U.S.C. § 1983.

judgment in the case of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Subsection (3) provides for relief from judgment where there is "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3). Subsection (6) provides for relief for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). We review a district court's disposition of a 60(b) motion for abuse of discretion. Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986).

It is fundamental that Rule 60(b) "provides for extraordinary relief, [and] a motion thereunder may be granted only under exceptional circumstances." Id. Plaintiffs allege that extraordinary relief is warranted in this case because defendants willfully and intentionally misled plaintiffs to believe that the deposition transcripts and other documents they requested would be promptly provided. They maintain that defendants' dilatory tactics in this regard prevented them from timely filing their opposition to summary judgment.

Plaintiffs first claim that the district court erred by denying their motion for reconsideration on grounds of "excusable neglect," within the meaning of Rule 60(b)(1). Discussing similar language found elsewhere in the Federal Rules of Civil Procedure, the Supreme Court has acknowledged that "excusable neglect" is a

-16-

fairly flexible concept that encompasses "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 388 (1993). Plaintiffs only address one of these factors, contending that the delay was not within their control because neither Caballero nor defense counsel provided certain "essential" documents, despite repeated requests. By contrast, the district court found that plaintiffs did have a significant measure of control over -- and ability to minimize -- the delay. In an order dated August 26, 2003, the district judge allowed an additional fifteen days for plaintiffs to take Caballero's deposition because they had been previously unable to do so. The order stipulated that "[i]f an impasse occurs, parties shall request the intervention of the Court, and should there be any other conflict regarding her deposition, Plaintiffs are therefore allowed to present a petition for sanctions." In its order denying plaintiffs' Amended Motion for Reconsideration, the district court found that plaintiffs "were provided an exceptional amount of time to either file their opposition or to request the Court's intervention." Nevertheless, despite allegedly ongoing difficulties, plaintiffs filed no motion requesting the court's intervention until March 23, 2004, more than six months after the district court instructed plaintiffs to invoke its assistance in the event of difficulty or delay, and fully eight months after

-17-

defendants' initial motion for summary judgment. Having exercised no diligence to meet the filing deadlines established by the district court, plaintiffs cannot now claim excusable neglect under Rule 60(b)(1) on grounds that the delay was outside of their control.

Plaintiffs next argue that the district court should have granted their motion for reconsideration because "[f]ailure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of [Rule 60(b)(3)]." Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988). However, we have made clear that "not every instance of nondisclosure merits the same judicial response." Id. at 923. In Anderson, we established a clear standard, such that

> in motions for a new trial under the misconduct prong of Rule 60(b)(3), the movant must show the opponent's misconduct by clear and convincing evidence. Next, the moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial. . . . The burden can also be met by presumption or inference, if the movant can successfully demonstrate that the misconduct was knowing or deliberate.

Id. at 926. In this case, plaintiffs have clearly not met their Anderson burden. Even if we assume, arguendo, that they have shown defendants' misconduct by "clear and convincing evidence," plaintiffs have not even attempted to show either that the misconduct "substantially interfered" with their ability to respond

to the summary judgment motion or that such misconduct was "knowing or deliberate."

Finally, plaintiffs maintain that they are entitled to relief under Rule 60(b)(6). In order for a party to qualify for subsection (6), there must be a showing of "extraordinary circumstances suggesting that the party is faultless in the delay." Pioneer, 507 U.S. at 393 (internal quotation marks omitted). In essence, the district court found that plaintiffs were not faultless because they had "more than reasonable time" to file their opposition to summary judgment, and because, despite the court's explicit instructions as to proper procedure in the event of stonewalling from defendants, plaintiffs failed to comply. In short, the district court did not consider plaintiffs' situation to be a unique one where, as is required under Rule 60(b)(6), "principles of equity mandate relief." Jinks v. AlliedSignal, Inc., 250 F.3d 381, 387 (2001). We find no abuse of discretion.

## III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment against plaintiffs.

**Affirmed**.