# United States Court of Appeals
## For the First Circuit

No. 06-1624

DR. IVONNE MONTFORT-RODRÍGUEZ, JUANITA FLORES-DE-SIACA,
CARMEN RIVERA-RIVERA, MARÍA COSS-MARTÍNEZ,

Plaintiffs, Appellants,

v.

CESAR A. REY-HERNÁNDEZ, in his individual capacity; DR. RAFAEL
ARAGUNDE, in his official capacity as Secretary of the Department
of Education of the Commonwealth of Puerto Rico; DEPARTMENT OF
EDUCATION OF THE COMMONWEALTH OF PUERTO RICO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Raúl Barrera-Morales, with whom Hernandez Sanchez Law Firm was
on brief, for appellants.
Courtney R. Carroll, with whom Roberto Sanchez Ramos,
Secretary of Justice, Salvador Antonetti Stutts, Solicitor General,
Eduadro A. Vera Ramirez, Eileen Landrón Guardiola and Landrón Vera,
LLP were on brief, for appellees.

October 18, 2007

**LIPEZ, Circuit Judge.** Appellants are four employees of the Puerto Rico Department of Education who claim that they were unconstitutionally demoted in 2001 based on their political affiliation. They brought this suit against the Department of Education and its Secretary, César Rey Hernández ("Rey"), a member of the Popular Democratic Party ("PDP").[1] Appellants, all members of the New Progressive Party ("NPP"), were removed from trust positions and reassigned to their preexisting career employee status within days after Rey assumed his position following the PDP's 2000 electoral victory.[2] The district court granted summary judgment for defendants, concluding that appellants failed to offer sufficient admissible evidence to establish a prima facie case of political discrimination. Although the record is meager and the case is therefore close, we conclude that appellants met their burden to generate a genuine issue of material fact on the elements of their claim. Accordingly, we vacate the judgment and remand for further proceedings.

---

[1] Appellants filed their action in March 2001 seeking declaratory and injunctive relief and damages under various provisions of federal law, including 42 U.S.C. § 1983, based on alleged violations of the First, Fifth and Fourteenth Amendments to the United States Constitution, as well as under the Commonwealth's Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1301-1431 (2000); id. tit. 31, § 5141 (1990). The Personnel Act was repealed in 2004 and replaced by the Public Service Human Resources Administration Act, P.R. Laws Ann. tit. 3, §§ 1461-1468p. We apply the law that was in effect at the time the complaint was filed.

[2] Rey remains a defendant in his individual capacity, but was replaced in his official capacity by the current Secretary, Rafael Aragunde.

**I.**

Defendant Rey took over as Secretary of Education at the beginning of January 2001.[3] Shortly thereafter, he sent letters notifying the plaintiffs that, effective January 15, their current trust appointments would cease and they would be reinstated to their previous career positions;[4] the letters gave no reason for the changes. Before the transfers, plaintiff Ivonne Montfort-Rodríguez ("Montfort") was Director of the Center of Investigations and Ethnographic Innovations, plaintiff Juanita Flores-de-Siaca ("Flores") was Facilitator of the Education Reform Institute for the San Juan region, plaintiff Carmen Rivera-Rivera ("Rivera") was Director of the Puerto Rico Statewide Systemic Initiative for Science and Mathematics, and plaintiff María Coss-Martínez ("Coss")

---

[3] The complaint alleges that Rey was named Secretary of the Department on or around January 2, 2001. In her deposition, plaintiff Ivonne Montfort-Rodríguez stated that she believed – based on news reports – that his first day at the Department was January 8. Plaintiff María Coss-Martínez also stated in a deposition that Rey "arrived at the Department on January 8th."

[4] Puerto Rico law distinguishes between "career" employees and "trust" or "confidential" employees. Career employees "may only be removed from their positions for just cause and after due filing of charges," P.R. Laws Ann. tit. 21, § 4554(b) (2001). Confidential employees "shall be of free selection and removal," P.R. Laws Ann. tit. 3, § 1350 (2000). Under the Personnel Act, "a career employee who accepts a trust position has an absolute right to be reinstated to a career position equal to the last position she held as a career employee." González-de-Blasini v. Family Dep't, 377 F.3d 81, 84 n.1 (1st Cir. 2004) (citing P.R. Laws Ann. tit. 3, § 1350(a)).

was Director of the Physical Education Program.  The reassignments resulted in lower salaries for all four plaintiffs.

Rey testified in his deposition that when he took over as Secretary he asked Lizzette Pillich Otero, the newly appointed Assistant Secretary for Human Resources, to prepare a list of the Department's trust employees so that he would "have an idea of how many trust positions there were."  Neither Rey nor Pillich examined personnel files in compiling the list,[5] and Rey testified that he had no knowledge of the particular job responsibilities for any plaintiff.  In his deposition, Rey gave the following explanation for generating the list and eliminating positions:

> Positions in the organigram [sic] were evaluated based on the need and based in the necessity.  In fact, we evaluated all the organigram of the whole organization, not just the trust positions, we re-arranged the whole administration.[6]

Rey also stated in his deposition that he was unaware of plaintiffs' political affiliations.  Plaintiffs maintain that he

---

[5]  Pillich stated in her deposition that she did not see the plaintiffs' personnel files until 2002.  Another Human Resources deponent, Hilda Cortés Figueroa ("Cortés"), testified that she conducted a study of trust positions that consisted of identifying "which are the positions, who holds them or held them, and the status of the position," as well as what positions those trust employees held in the career service.

[6] At oral argument, counsel asserted that the Department, which she said had more than 72,000 employees, was encountering "budgetary problems" and "rumors of scandal" and was an agency "in trouble."  Appellees' brief invokes neither budget issues nor possible scandal as a basis for a reorganization, and we likewise found no reference in the record to such concerns.

-4-

must have known their NPP status because their involvement in the party was common knowledge throughout the Department and their trust positions during the prior NPP administration circumstantially revealed their affiliation with that party. Plaintiffs further assert that they were replaced by members of the PDP, although that allegation is based partially on hearsay.[7]

The defendants' motion for summary judgment was referred to a magistrate judge, whose Report and Recommendation concluded that the plaintiffs' evidence was inadequate to survive defendants' motion for summary judgment because some of the facts essential to a finding of political discrimination – that Rey knew plaintiffs' political affiliations and replaced them with members of his own party – were supported only by speculation or hearsay. The district court agreed that plaintiffs had not met their burden to establish a prima facie case of political discrimination, having failed to provide "admissible evidence, either direct or circumstantial, of political discrimination on the part of defendants." Accordingly, the court granted defendants' motion for

_____

[7] Each appellant identified her successor, but two of them offered only hearsay knowledge of the successor's affiliation with the PDP. Appellant Flores named her replacement as Caribel Rivera Casanova and identified Rivera as a member of the PDP. Appellant Coss stated in her deposition that she knew that her replacement, Jorge Colón, is a PDP member.

summary judgment and dismissed the case with prejudice.[8]  The court

subsequently denied plaintiffs' motion to alter or amend judgment.[9]

## II.

### A. Standard of Review and Burden of Proof

We review the district court's summary judgment ruling de

novo, taking the record facts and all inferences to be drawn from

them in the light most favorable to the nonmoving party.  Aguiar-

Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006).

Summary judgment is appropriate when the record reveals no genuine

issue as to any material fact, and the undisputed facts establish

the moving party's entitlement to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A genuine issue is one that "'may

reasonably be resolved in favor of either party' at trial," Cordi-

Allen v. Conlon, 494 F.3d 245, 249 (1st Cir. 2007) (quoting Garside

v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)), and

"[s]ummary judgment 'should be granted only where . . . [further]

inquiry into the facts is not desirable to clarify the application

---

[8] Defendants asserted a number of other grounds on which they claimed they were entitled to summary judgment, including that appellants held positions for which political affiliation was an appropriate criterion.  That particular argument has not been pursued on appeal because the job descriptions necessary to evaluate the positions are not in the record.  See, e.g., Valdizán v. Rivera-Hernandez, 445 F.3d 63, 65-66 (1st Cir. 2006) (examining job description to determine whether political compatibility was an appropriate qualification).  Defendants may, of course, pursue this aspect of the case on remand if they so desire.

[9] Given our disposition on the summary judgment issue, we need not further consider this ruling.

-6-

of the law,'" Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) (quoting Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

It is well established that "[g]overnmental employees who are not in policy-making positions of confidence are shielded from adverse employment decisions based on their political affiliations." Borges Colón v. Román-Abreu, 438 F.3d 1, 14 (1st Cir. 2006); see also Rutan v. Republican Party of Ill., 497 U.S. 62, 64-65 (1990). Given that defendants do not argue on appeal that plaintiffs were policymakers whose job responsibilities require political compatibility with the PDP administration, we focus on whether a jury could infer from the evidence that Rey knew of the plaintiffs' political affiliation and replaced them because of it.[10] See Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007) ("To establish a prima facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action."); Vazquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 30 (1st Cir. 2004) (noting requirement of "'sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiff['s] constitutionally protected conduct – in

---

[10] Although plaintiffs were denominated trust employees, that label alone does not subject them to patronage dismissal. See Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 468 n.4 (1st Cir. 2007) ("[M]any, though not all, trust positions are policymaking positions into which a newly elected administration may place members of its party without violating the First Amendment.") (citing cases).

this case, political affiliation with the NPP – was a "substantial" or "motivating" factor behind [her] dismissal'" (quoting Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993))), vacated and remanded on other grounds, 126 S. Ct. 1329 (2006); González-de-Blasini v. Family Dep't, 377 F.3d 81, 85 (1st Cir. 2004). Plaintiffs have the burden of proving the link between their adverse treatment and their politics. Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006).

With these parameters in mind, we consider the evidence thus far developed by the parties.

**B. Assessing the Prima Facie Showing of Political Discrimination**

Defendants urge us to accept the magistrate judge's conclusion that the evidence presented by plaintiffs is inadequate to show either Rey's knowledge of their politics or a deliberate decision to remove them based on their NPP status. Defendants further assert that even the plaintiffs' evidence reveals that the jobs they previously held were modified after their departures – demonstrating that the motivation behind the transfers was not impermissible political discrimination, but a permissible streamlining of the department's operations. They specifically invoke the "changeover defense," which relies on the prerogative of newly elected officials to make politically neutral changes to improve departmental operations after a careful study of existing personnel and business practices. Members of the outgoing

administration's political party inevitably will be affected by such changes. See, e.g., Borges Colón, 438 F.3d at 6 (noting that the effect of a new administration's policy choices may fall most heavily on the party that has lost power); Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1220-21 (1st Cir. 1989) (en banc).

Although the changeover defense ultimately may prevail, our close review of the record reveals an adequate circumstantial basis for concluding both that Rey was aware of plaintiffs' political allegiance to the NPP and that plaintiffs were replaced with PDP loyalists. Most significantly, the record lacks evidence of a considered appraisal of jobs and responsibilities that could substantiate a changeover defense. On this record – given both its contents and its gaps – we believe a jury reasonably could find political discrimination.

1. The Evidence of Political Affiliation

Although plaintiffs have produced no direct evidence that Rey was aware of their affiliation with the NPP, the record contains circumstantial evidence that could support such a finding. Pillich testified that she believed all of the trust positions on the list that she compiled for Rey, including those held by plaintiffs, were occupied by individuals appointed by the prior administration "because the last administration was there for eight years." This statement supports the inference that Pillich assumed the individuals in those positions probably were affiliated

with the former NPP administration.  This is particularly so given that Pillich further indicated that political affiliation with the newly elected PDP administration "may be one" of the factors necessary for those trust positions to ensure that the individuals in the jobs could "collaborate . . . in th[e] educational project" of the new administration.[11]  Although Pillich emphasized that political affiliation was not a "determining" factor, her testimony at least suggests that plaintiffs were identified as NPP members and were subject to removal for that reason.[12]  It is a small

_____

[11] As noted earlier, we do not in this appeal consider the defense that political affiliation was an appropriate criterion for appellants' positions.  However, testimony in the record suggesting that appellants' supervisors were aware of, and considered, their affiliation is also relevant to assessing the prima facie case of political discrimination.

[12] The appendix on appeal, which was provided by the appellees, contained only partial deposition transcripts.  We requested several original exhibits from the district court, but these, too, consisted of excerpts from the depositions.  The portions of Pillich's deposition on which we rely are reproduced below:

Q. [I]n the case of the plaintiffs, was their political affiliation necessary to occupy their positions?
A. Their political affiliation?
Q. Yes.
A. If they believe in the educational project and the Secretary had the faculty to . . . hire people that he knew that may collaborate with him in that educational project of that new administration . . . which he proposed in his government program.
. . .
Q. . . . . That is, when it was talked about political need it was . . . that it was not needed, that is, that it was not a requirement, that is what you mean?
A. No, no, no.  No, that is not what I want to say. That it was not determining.
. . .

inferential step from Pillich's testimony to Rey's own knowledge. That is, we think it fair to infer that Rey, a PDP political appointee who asked Pillich to generate the list of trust employees as soon as he took over the Department, shared Pillich's assumptions regarding the affiliations of all trust-classified incumbents.[13]

---

A. But if they held positions in the service of trust, it is assumed that . . . to hold positions in services of trust you have to work . . . you have to substantially collaborate in the implementation of the public policy, because otherwise . . .
Q. Then it was . . . That is why the political affiliation was one of the factors.
A. That is not my answer.
Q. No, but I ask you, I ask you . . .
A. I am telling you . . .
. . .
A. I repeat that it was not a determining factor . . .
Q. But it was one of the factors.
. . .
A. Well, if it [was] not determining you should understand that no.
Q. That it is one of the factors or that (unintelligible).
A. That it may be one.
Q. Okay. Do you know if they had confidential information, in their positions, as part of their performance in their positions, they had . . . obtained confidential information?
A. No, I don't know.
Q. Well, that being the case, I am not going to present any more questions.

In her deposition, Cortés, the other Human Resources representative who surveyed the trust positions, stated that she was not aware of the plaintiffs' duties, but noted in response to questioning: "I don't believe the political affiliation is a requisite for any position."

[13] In his deposition, Rey stated: "I asked for an inventory of the trust positions to have an idea of how many trust positions

Taken in the light most favorable to plaintiffs, Pillich's deposition testimony also inferentially supports plaintiffs' allegation that all of the NPP trust employees identified on the list that she compiled were replaced by PDP members who could be counted on to "collaborate" in the new administration's "educational project." Pillich insisted that loyal party members were needed to support plaintiffs' positions. Interestingly, defendants offered no evidence to rebut such an implication, despite the fact that such evidence would probably be obtainable from the replacements identified by the plaintiffs. Unlike cases in which we have noted the plaintiffs' failure to provide the names of their replacements, see, e,g., Vázquez-Valentín, 385 F.3d at 38; Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000), the plaintiffs here have done so.

2. Circumstantial Evidence of Motivation

In seeking to justify plaintiffs' removals as part of a natural transition from one administration to the next – the changeover defense – defendants attempt to downplay the significance of the plaintiffs' political affiliation and that of their successors. This effort falters on the record before us. Plaintiffs were reassigned to their lower level career positions, without explanation, about a week after Rey assumed the Secretary's

there were." He explained that the purpose of the list was "[t]o get to know the trust positions, their importance and to be able to have them available."

-12-

role.  Although Rey stated in his deposition that the positions in the organization were evaluated based on need, the record contains no evidence – other than Rey's bald assertion that "we re-arranged the whole administration" – of a considered plan to restructure the Department of Education.  Both Rey and Pillich acknowledged that, at the time the changes were made, they knew neither what plaintiffs' duties were nor how well they had performed their jobs.[14]  See Agosto-de-Feliciano, 889 F.2d at 1221-22 ("In evaluating the changeover defense, the factfinder should take into account, inter alia, whether the actions occurred precipitately or after some opportunity for appraisal, whether they seem connected with previously announced goals, and whether they flowed from an organizational or procedural study." (footnote omitted)).

The quick terminations, with no attention to either job functions or performances, are strongly suggestive of pure political motivation.  See id. at 1222 n.12 ("[C]hanges made within days of a new administration's ascent to power ordinarily would be more likely to reflect an improper political housecleaning than would changes made months later, after the new officials have had

_____

[14] Rey said that he had not examined the plaintiffs' personnel files because "the duties of the director of the Department of Education are more complex than that."  Although he signed the letters in which plaintiffs were informed of their removals, he said he had no knowledge of who recommended that the plaintiffs be transferred.  Pillich testified that she began her position as Assistant Secretary for Human Resources on January 9; three of the plaintiffs' reassignment letters are dated January 12.  The fourth is undated but contains the same termination date of January 15.

a chance to evaluate how to reorganize their departments to best meet their policy goals."). Indeed, the record permits an inference that the defendants mistakenly believed they could demote all NPP trust employees without regard to their policymaking functions. Moreover, the evidence was equivocal as to whether the nature of plaintiffs' positions changed after they were removed, permitting a jury to conclude on this record that the personnel actions were made for political reasons rather than to improve efficiency. There was some evidence of task realignment: Montfort's former secretary testified in her deposition that the office functioned differently "[b]ecause now it's the director who makes the decisions . . . not like it was done before." In addition, Flores stated that the Institute that she led "doesn't operate as before." However, Flores also observed that her old work team is carrying out the same functions that she performed. Her secretary agreed, testifying that Flores's successor does not do things the same way as Flores, but that "[s]he has the same functions."[15]

The absence of evidence of a comprehensive or carefully studied effort at reform distinguishes this case from a number of others in which we have rejected claims of political discrimination following a change in administration. For example, in Aguiar-

---

[15] We found nothing in the record concerning possible changes in the work performed by the successors to Coss and Rivera.

<u>Carrasquillo</u>, the defendant had directed an investigator to conduct an audit of all recent employment actions to evaluate their compliance with department regulations.  We concluded there that it did not matter that NPP members were heavily affected:

> [I]f uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted.  It is in the nature of a change in administration that job actions by the new party will have a disparate impact on members of the outgoing party.

445 F.3d at 26 (quoting <u>Sánchez-López</u> v. <u>Fuentes-Pujols</u>, 375 F.3d 121, 140 (1st Cir. 2004) (internal quotation marks omitted)).  Similarly, in <u>Vázquez-Valentín</u>, the challenged reassignments occurred following defendants' review of the personnel files of all 1,300 or so municipal employees.  385 F.3d at 26; <u>see</u> <u>also</u> <u>Vélez-Rivera</u> v. <u>Agosto-Alicea</u>, 437 F.3d 145, 149 (1st Cir. 2006) (affirming summary judgment for defendants where an independent contractor conducted an audit to assess the legality of all personnel transactions during a particular period); <u>González-de-Blasini</u>, 377 F.3d at 84 (affirming summary judgment for defendants where their office conducted an audit of its Human Resources Department following the change in administration).

### 3. Summary of Evidence

In sum, the admissible evidence and the plausible inferences that a jury could draw from it suffice to meet

appellants' burden to show a genuine factual dispute as to whether Rey knew of their NPP affiliation and replaced them with his political allies based solely on that association. The deposition testimony of Rey and Pillich, when viewed in context, renders this case more circumstantial than speculative. See, e.g., Pequero-Moronta, 464 F.3d at 46 ("[W]here 'the plaintiffs were all members of the adverse party . . . their superiors knew this, and . . . their duties were given to active supporters of the party in power,' we found there was ample evidence for the plaintiffs' case to avoid summary judgment." (quoting Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 (1st Cir. 1997))); González-de-Blasini, 377 F.3d at 86 (recognizing that a "'prima facie case for political discrimination may be built on circumstantial evidence'" so long as plaintiffs have "generated 'the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations'" (quoting Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988))). The evidence here, "though thin, point[s] in different directions; that is, it tend[s] to support conflicting inferences. Summary judgment cannot be predicated on so vacillatory a record." Mandel, 456 F.3d at 207; see also In re Varrasso, 37 F.3d 760, 764 (1st Cir. 1994) (holding that a court faced with competing plausible inferences may not make its choice "under the banner of summary judgment").

The judgment of the district court is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.  We take no view of the propriety of summary judgment on a more fully developed record.  Costs are taxed in favor of the appellants.

**So ordered.**