Arnold Gil CARABALLO,
et al., Plaintiffs,

v.

Commonwealth of PUERTO RICO,
et al., Defendants.

Civil No. 13–1309(DRD).

United States District Court,
D. Puerto Rico.

Jan. 7, 2014.

Israel Roldan–Gonzalez, Aguadilla, PR, for Plaintiffs.

Jaime J. Zampierollo–Vila, Puerto Rico Department of Justice, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

DANIEL R. DOMINGUEZ, District Judge.

Plaintiffs Arnold Gil Caraballo ("Gil"), Joel Ramos Beltrán ("Ramos"), and Noel Román Ferrer ("Román")(collectively, "Plaintiffs"), along with Nanette Guevara and the conjugal partnership of Gil–Guevara, filed an *Amended Complaint* on June 21, 2013 (Docket No. 11) against Defendants Commonwealth of Puerto Rico ("Commonwealth"), the Secretary of the Department of Correction and Rehabilitation José R. Negrón Fernández ("Negrón"), Captain Ramón López López ("López"), and Lieutenant David Cruz–Fernández ("Cruz")(collectively, "Defendants"), all in their official and personal capacities, alleging political discrimination. Plaintiffs bring this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First, Fifth and Fourteenth Amendments of the United States Constitution, Public Law No. 100 of 1959, 29 L.P.R.A. § 146 et seq., Public Law No. 382 of 1950, 29 L.P.R.A. §§ 136–138, and Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico.[1]

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are all sergeants in the Department of Correction and Rehabilitation in Puerto Rico and had been assigned to the Aguadilla Detention Center for many years.[2] Plaintiffs are all affiliated with the New Progressive Party ("NPP") and actively participated in the November 2012 elections. According to Plaintiffs, their political ideologies were well known to all Defendants.

Defendants López and Cruz are high ranking[3] employees in the Department of Correction and Rehabilitation, and, according to Plaintiffs, are active members of the Popular Democratic Party ("PDP"), having expressed their affiliation and support for the PDP on a number of occasions in 2012. Defendant Negrón is the Secretary of the Department of Corrections and Rehabilitation, and has been occupying said position since the PPD administration was sworn in on January 2013.

Plaintiffs claim that immediately after the results of the November 6, 2012 general election they were subject to political

---

1. Plaintiffs' claims arising under the laws of Puerto Rico are attached to the instant case via the exercise of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Plaintiff Ramos had been assigned to the Aguadilla Detention Center since 2002; Plaintiff Román since 1985; and Plaintiff Gil since 1990.

3. Defendant Lopez is a captain and Defendant Cruz is a lieutenant.

harassment by Defendant Cruz, who later identified himself as a principal aid of Defendant Negrón. Defendant Cruz told Plaintiffs, on several occasions, that he was in charge of identifying all of those Department of Correction's employees that were members of the NPP and ordered, by Defendant Negron, to dismiss or transfer them to other facilities. Defendant Cruz emphasized that, as a result of their political ideology, Plaintiffs would be given hell during the following four years and warned them that they would be the first employees to be dismissed or transferred from the Aguadilla Detention Center. According to Plaintiffs, Defendant Cruz's conduct was continuous and performed in the presence of other Department of Correction's employees.

On February 28, 2013, Plaintiffs were furnished transfer letters signed by Defendant Negrón ordering their transfers from the Detention Center in Aguadilla to the Detention Center of the West in Mayaguez. Said letters were predated January 31, 2013 and neglected to specify a reason for the transfers. These transfer letters were hand delivered to Plaintiffs by Defendant López, who sarcastically informed them that this was their reward for being members of the NPP. Defendant López further stressed, while laughing, that Plaintiffs would learn a lesson now that the PDP was in power and that it should not take them by surprise if they were all transferred to Ponce or San Juan within a week. This conversation allegedly took place in front of other Department of Correction employees.

Plaintiffs aver that they are career employees of the Commonwealth of Puerto Rico and that their work performance has always been exemplary. Furthermore, they claim that because of their rank, experience, and performance they worked a regular schedule at the Aguadilla Deten-

tion Center. However, after being transferred to Mayaguez, Plaintiffs were assigned to work on rotating shifts and are now incurring additional transportation expenses, which they estimate to be approximately $1,000 a month per Plaintiff. Lastly, Plaintiffs maintain that their prior positions at the Aguadilla Detention Center are now occupied by members of the PDP.

On July 29, 2013, Defendants filed a *Motion to Dismiss* (Docket No. 16) alleging, *inter alias,* that the claims against the Commonwealth and Defendant Negrón in his official capacity are barred by Eleventh Amendment Immunity. Defendants further argued that Plaintiffs had failed to state a claim under 42 U.S.C. § 1983 and under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Additionally, Defendants contend that Plaintiff Guevara lacks standing to bring a § 1983 suit and that all state law claims should be dismissed.

On August 27, 2013, Plaintiffs filed their *Response in Opposition to Defendants' Motion to Dismiss* (Docket No. 23). Therein, Plaintiffs argued that their Fourteenth Amendment claim cannot be dismissed, as their equal protection rights were violated when the government failed to afford them the same protections as other similarly situated employees. With regards to their First Amendment claim, Plaintiffs advance that they belong to a different political party than Defendants, that Defendants knew the political affiliation, and that they were transferred and demoted as a result of their political preference. However, Plaintiffs do concede that all claims against the Commonwealth of Puerto Rico and Negrón, in his official capacity, for monetary damages are barred under the Eleventh Amendment. Plaintiffs further acknowledge that their Complaint does not support a Fifth Amend-

ment claim, as there are no federal actors in this case, and that Plaintiff Guevara lacks standing to bring a Section 1983 suit. However, Plaintiffs request leave to file a second amended complaint to include a state law claim under Article 1802 of the Puerto Rico Civil Code in favor of Plaintiff Guevara.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

■ Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'")(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677–679, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative expla-

nation." *Id.* at 679–80, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez,* 640 F.3d at 12, (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

 However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible

evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 49 (1st Cir.2009)).

 The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García–Catalán v. United States,* 734 F.3d 100, 104 (1st Cir.2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly–Iqbal. Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. LEGAL ANALYSIS

#### A. Section 1983 Claims

 Section 1983 does not create any independent substantive rights; Section

1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan,* 443 U.S. 137, 145, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("Section 1983 ... is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred...."); *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Lockhart–Bembery v. Sauro,* 498 F.3d 69, 74 (1st Cir.2007); *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000). Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

■■ When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Acting under color of state law requires that a "de-fendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

■ In the instant matter, all of the facts alleged by Plaintiffs transpired under the umbrella of the Department of Correction and Rehabilitation, an executive agency of the Commonwealth of Puerto Rico. At all relevant times, Defendants were employed by the Commonwealth of Puerto Rico and acted in their official capacities. Furthermore, the alleged discrimination occurred within the scope of Defendants' employment, as all three of the Plaintiffs worked under the supervision of the three individual Defendants. Further, the individual Defendants were acting under color of state law when the purported discriminatory conduct transpired, as the alleged discrimination was committed by employees of the Commonwealth of Puerto Rico during the course of their employment with the Dept. of Correction. Therefore, Section 1983 is an appropriate avenue to remedy the alleged conduct that supposedly deprived Plaintiffs of their "rights, privileged, and immunities" protected by law.

■ Although Section 1983 provides an avenue to remedy many deprivations of civil liberties in federal court, it "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Eleventh Amendment bars lawsuits for monetary damages against a State in federal court, unless said State has waived its immunity or unless Congress has expressly overridden that immunity. *See* CONST. Amend. XI; *Will,* 491 U.S. at 66, 109 S.Ct. 2304 (citing *Welch v. Texas Dept. of Highways and Public*

*Transportation*, 483 U.S. 468, 472–473, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (plurality opinion)); *O'Neill v. Baker*, 210 F.3d 41 (1st Cir.2000). Furthermore, "neither a state agency nor **a state official acting in his official capacity may be sued for damages in a section 1983 action.**" *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir.1991) (emphasis ours). The reasoning follows that a suit against an official actor is a suit against his office, and by default a suit against the state. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304; *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *See Irizarry–Mora v. Univ. of Puerto Rico*, 647 F.3d 9 (1st Cir.2011); *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935 (1st Cir.1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987) (citing *Ramirez v. P.R. Fire Service*, 715 F.2d 694, 697 (1st Cir.1983) and *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (emphasis in the original); *Maysonet–Robles v. Cabrero*, 323 F.3d 43 (1st Cir.2003).

In the instant matter, Plaintiffs seek to hold the Commonwealth of Puerto Rico and three employees of the Department of Corrections and Rehabilitation liable for monetary damages. However, Puerto Rico and its agencies are not considered "persons" under Section 1983, and thus, cannot be held liable for monetary damages in their official capacities. The Commonwealth has not expressly waived its Eleventh Amendment immunity in the case at bar, and, as Defendants correctly argue, a judgment against the individual Defendants in their official capacities is "a judgment against the Commonwealth and the Commonwealth would end up paying for it." Docket No. 16, Pg. 10. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** all Section 1983 claims against the Individual Defendants in their official capacity and against the Commonwealth of Puerto Rico for monetary damages.[4] We now proceed to analyze each constitutional violation alleged by Plaintiffs against Defendants in their personal capacities for monetary damages and in their official capacities for prospective injunctive relief.

### a) The First Amendment

The First and Fourteenth Amendments protect the rights of individuals to freely associate with others "for the common advancement of political beliefs and ideas." *Kusper v. Pontikes*, 414 U.S. 51, 57, 58, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973)

---

**4.** Prospective injunctive relief as an equitable remedy against defendants in their official capacity is not barred by the Eleventh Amendment, pursuant to *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), to end a "continuing violation of federal law." *Mills v. State of Me.*, 118 F.3d 37, 54 (1st Cir.1997) (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). In *Mills*, the First Circuit stressed that "the doctrine of

*Ex parte Young* ... allows plaintiffs to avoid the Eleventh Amendment bar by naming a state officer **in his official capacity** in cases where prospective declaratory and injunctive relief is sought." *Id.* at 53 (emphasis ours). This is of particular relevance in the case at bar, as Plaintiffs seek as prospective relief to return to their previous position in Aguadilla and to be reinstated to the same regular work schedule as before.

("The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom.").

Under the First Amendment, government officials are prohibited from taking an adverse employment action against a public employee because of the employee's political affiliation, unless political loyalty is a legitimate requirement for the position in question. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 516–518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 372–73, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion). Subject to the latter exception, government officials cannot discharge public employees simply because of their political affiliations. *See Elrod*, 427 U.S. at 350, 96 S.Ct. 2673. Additionally, "[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Rutan*, 497 U.S. at 75, 110 S.Ct. 2729 (rejecting the view that "[o]nly those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment.") (citing *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954–957 (7th Cir.1989)). The First Amendment serves to protect the freedom of government employees to associate with a political party, limiting the government's rights to interfere with said beliefs, except in the most compelling circumstances. *Id.* at 76, 110 S.Ct. 2729.

To succeed on a First Amendment political discrimination claim, Plaintiffs must prove: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Lamboy–Ortiz v. Ortiz–Velez*, 630 F.3d 228, 239 (1st Cir.2010). In order to survive the motion to dismiss stage, a plaintiff must make a fact specific showing that his political affiliation was a substantial or motivating factor in the employment decision. *See Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592, 594 (1st Cir.2011) (citing *Montfort–Rodríguez v. Rey–Hernández*, 504 F.3d 221, 224–25 (1st Cir. 2007)).

Applying the four factor test outlined in *Lamboy–Ortiz*, the Court determines that Plaintiffs have set forth sufficient factual allegations to nudge their claim of political discrimination past the motion to dismiss stage.

The first prong of the inquiry requires Plaintiffs to demonstrate that they and Defendants have opposing political affiliations. At this stage, it is sufficient for Plaintiffs to allege that they and Defendants are affiliated to different political parties. *See Ocasio–Hernandez*, 640 F.3d at 13. In the instant matter, Plaintiffs alleged that they are active members of the NPP and that they actively participated in the November 2012 elections. Conversely, Plaintiffs averred that Defendant Negrón is affiliated to the PDP and that Defendants López and Cruz "are well known and active members of the PDP," having expressed their affiliation to the PDP on numerous occasions before the employment transfers occurred. (Docket No. 11, ¶ 46). Accordingly, Plaintiffs' factual allegations are enough, at this stage of the proceedings, to satisfy the first prong of the inquiry. *See Ocasio–Hernandez*, 640 F.3d at 13 (holding that at the motion to dismiss stage it is sufficient to merely allege that plaintiffs and defendants are affiliated to different political parties).

■ Under the second prong of the inquiry, Plaintiffs must show that Defendants were aware of Plaintiffs' political affiliations to the NPP. According to Plaintiffs, Defendant Cruz personally threatened them with dismissal or transfers as a result of their affiliation with the NPP. Defendant Cruz even admitted to them that he had been ordered by Defendant Negrón,[5] who had just been appointed the Secretary of the Department of Correction, to identify individuals affiliated with the NPP and to report his findings. Plaintiffs allegedly received a transfer letter signed by Defendant Negrón a short time after their conversation with Defendant Cruz, and purport that the letter was void of any reasons for the transfer. The Court is under the impression that this allegation constitutes a prima facie circumstantial inference that Defendant Negrón was aware of Plaintiffs' political affiliations, as Plaintiffs were all eventually transferred after being informed by Cruz that Negrón was purposefully identifying and persecuting members of the NPP. Lastly, Defendant López was also aware of Plaintiffs' political ideologies, as he personally delivered the transfer letters to Plaintiffs and informed them that the letters constituted their reward for being members of the NPP. Accordingly, Plaintiffs have satisfied the second prong of the inquiry, having set forth sufficient factual allegations that, when taken as true under 12(b)(6) standards, demonstrate that Defendants were all aware of Plaintiffs' NPP affiliations.

The third and fourth prongs require Plaintiffs to show that an adverse employment action occurred and that their political affiliation was a substantial or moti-

vating factor for the adverse employment action. To suffer an adverse employment action, an employee need not be discharged or severely impacted by a sudden change in the work place. *See Rutan,* 497 U.S. at 75, 110 S.Ct. 2729. A showing that an employer transferred, demoted, or failed to promote an employee will suffice. *Id.*

As to prong three, Plaintiffs argue that on February 28, 2013 they were transferred from the Detention Center in Aguadilla to a Detention Center in Mayaguez and that they went from working a regular work schedule to working on rotating shifts. Taking these allegations as true, the Court holds that Plaintiffs suffered an adverse employment action as a result of their transfers and change of work schedules. Due to their ranks as sergeants, Plaintiffs were accorded several benefits that were stripped from them immediately after the elections. Although the change in circumstances might not have been devastating, the allegations that Plaintiffs were transferred and subjected to a change in work schedule are enough to satisfy prong three of the analysis.

Lastly, Plaintiffs further aver that Defendants repeatedly emphasized that their political affiliations were the sole reason for their transfers to Mayaguez. Particularly incriminating are the allegations averred by Defendants after the election results in November 2012, especially the statements made by López to Plaintiffs when informing them of their transfers. Specifically, Plaintiffs contend that López, while laughing, stressed that Plaintiffs would learn a lesson now that the PDP was in power and that they should not be

---

5. As to Defendant Negrón, Plaintiffs must have admissible evidence as to liability at the next stage of the proceedings, as mere respondeat superior is insufficient under Section 1983. *See Maldonado–Denis v. Castillo–Rod-*

*ríguez,* 23 F.3d 576 (1st Cir.1994). Nevertheless, Negrón, as the Secretary of Corrections, is a necessary party as to prospective injunctive relief. *See* Footnote 4, *supra.*

surprised if they were transferred to Ponce or San Juan within the week. Hence, the factual allegations in the complaint, when taken as true, show that Plaintiffs suffered an adverse employment action solely because of their affiliation to the NPP.[6]

Accordingly, the Court hereby **DENIES IN PART AND GRANTS IN PART** Defendants' motion to dismiss Plaintiffs' First Amendment claims. Plaintiffs' claims for monetary relief against all individual Defendants in their personal capacities and for injunctive relief in their official capacities, as well as their claims against the Commonwealth of Puerto Rico for injunctive relief, remain viable causes of action.[7] However, Plaintiffs' claims against the Commonwealth of Puerto Rico and the individual Defendants in their official capacity for **monetary** damages are hereby **DISMISSED with prejudice.**[8]

### b) The Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution prohibits states from depriving a person of "life, liberty, or property, without due process of law" and from denying to any person "within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV.* Plaintiffs allege that Defendants' actions violate both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Hence, the Court will address each of these claims in turn.

### i. Equal Protection Clause

Plaintiffs argue that Defendants violated the Equal Protection Clause when similar situated individuals within the government were accorded preferential treatment in the workplace because of their political affiliations. As such, Plaintiffs' Equal Protection claims arise out of the same exact facts that give rise to their First Amendment claim: that Defendants allegedly discriminated against them because of their political affiliation to the NPP. (Docket No. 23, Pg. 4).

The Equal Protection Clause requires that similarly situated individuals be treated in a similar manner by the

---

**6.** Plaintiffs further allege in their complaint that they are career employees with the Dept. of Corrections and that their work performance has always been excellent. They claim that there have never been any complaints or admonishments filed against them.

**7.** However, the Court hereby **DISMISSES WITH PREJUDICE** the Section 1983 claims set forth by Plaintiff Guevara and the conjugal partnership of Gil–Guevara, as Plaintiffs concede that Guevara lacks standing to bring suit under Section 1983. The Court emphasizes that both Guevara and the conjugal partnership lack standing under Section 1983, as "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." *Sanchez–Arroyo v. Dep't of Educ. of Puerto Rico,* 842 F.Supp.2d 416, 434 (D.P.R.2012) (internal citations and quotations omitted); *see Gonzalez–Droz v. Gonzalez–Colon,* 717 F.Supp.2d

196, 205–06 (D.P.R.2010) (reasoning that "actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights.").

Further, in light of the early stage of the proceedings, Plaintiff Guevara's request for leave to file a second amended complaint to include a supplemental state law claim under Article 1802 of the Puerto Rico Civil Code is **GRANTED.** Plaintiff is reminded that when a motion to dismiss under Fed.R.Civ.P. 12(b)(6) appears, it is specifically authorized under Fed.R.Civ.P. 15(a)(1)(B) to amend its pleadings "as a matter of course" within twenty-one (21) days. The Court shall not accept further amendments.

**8.** Plaintiffs concede that the Commonwealth of Puerto Rico and Defendant Negrón in his Official Capacity are immune from claims for monetary damages. *See* Docket No. 16, Pg.

government. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, "an equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim" and should only be considered under the First Amendment. *Uphoff Figueroa v. Alejandro,* 597 F.3d 423, 430 n. 8 (1st Cir.2010); *See, e.g., Morales–Santiago v. Hernández–Pérez,* 488 F.3d 465, 471 (1st Cir.2007) (dismissing plaintiffs' equal protection claim in light of overlap between plaintiffs' equal protection and First Amendment claims); *Pagán v. Calderon,* 448 F.3d 16, 36 (1st Cir.2006). Therefore, political discrimination claims under the Equal Protection Clause merely rehash First Amendment discrimination claims, and, as such, are to be considered solely under the preamble of the First Amendment.

Accordingly, Plaintiffs' Equal Protection Clause claims are hereby **DISMISSED WITH PREJUDICE,** as said claims arise from the same exact factual background giving rise to Plaintiffs' First Amendment political discrimination claims.

### ii. Due Process Clause

Defendants in the case at bar also maintain that Plaintiffs' Fourteenth Amendment Due Process claims should also be dismissed, arguing that the complaint does not give rise to neither a substantive nor procedural due process claim. Although Plaintiffs fail to specify in their complaint and their *Response in Opposition to Defendants' Motion to Dismiss* which type of procedural claim they are pursuing, the Court will nonetheless, in an abundance of caution, analyze Plaintiffs' claims under both substantive and procedural due process. Notwithstanding, the Court finds that Plaintiffs' Fourteenth Amendment Due Process Clause claims fail. We briefly explain.

### 1. Substantive Due Process

It is well settled that, similar to an Equal Protection Clause claim, a substantive due process claim will not survive if the alleged acts giving rise to said claim are covered by a specific constitutional provision. *See Pagán,* 448 F.3d at 33–34 (holding that plaintiff had no substantive due process claim, as it relies on charges that defendant's actions were politically motivated); *S. Cnty. Sand & Gravel Co., Inc. v. Town of S. Kingstown,* 160 F.3d 834 (1st Cir.1998). The First Amendment, and not the Fourteenth Amendment, is the constitutional provision that safeguards against state sponsored political discrimination or retaliation. *Id.* at 33–34 (citing *Ruiz–Casillas v. Camacho–Morales,* 415 F.3d 127, 134 (1st Cir.2005)). In the case at bar, the appropriate avenue for relief is not the Fourteenth Amendment, but rather the First Amendment, which provides relief for claims of political discrimination on behalf of state actors. Accordingly, Plaintiffs' Fourteenth Amendment Substantive Due Process claims are hereby **DISMISSED WITH PREJUDICE.**

### 2. Procedural Due Process

Under the Due Process Clause of the Fourteenth Amendment, a "public employee who possesses a property interest in continued employment cannot be discharged without due process of law." *Gonzalez–De Blasini v. Family Dept.,* 377 F.3d 81, 86 (1st Cir.2004) (citing *Santana v. Calderon,* 342 F.3d 18, 23 (1st Cir. 2003)); *See Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir.1996) (requiring plaintiff to demonstrate a protected interest in life, liberty, or property *to* prevail in action alleging deprivation of procedural due process). Property interests are not created by the Constitution, but rather "stem from an independent

source such as state law." *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 6 (1st Cir.2000). Once a state confers a property interest in public employment, it may not deprive an individual of said interest without due process of law. *Id.*

 In Puerto Rico, career government employees have a property interest in their continued employment. *See Gonzalez–De Blasini,* 377 F.3d at 86; *Figueroa–Serrano,* 221 F.3d at 6. Notwithstanding, government employees have "a property interest in their continued employment, not in the functions they perform." *Ruiz–Casillas,* 415 F.3d at 134 (no property interest in job functions and duties); *See Morales–Santiago v. Hernandez–Perez,* 488 F.3d 465, 471–72 (1st Cir.2007) (holding that employees do not have a property interest in a reduced salary).

 In the case at bar, Plaintiffs were not terminated from their positions, but were rather transferred or reassigned to more onerous positions (rotating v. regular shifts). As career employees of the Commonwealth of Puerto Rico do not have a property interest in their job functions,[9] but only in their continued employment, the Court hereby **DISMISSES** Plaintiffs' procedural due process claims **WITH PREJUDICE.**

### c. Fifth Amendment Claims

Plaintiffs concede that the complaint does not give rise to a cause of action under the Fifth Amendment, as there are no federal actors in the instant matter (Docket No. 23, Pg. 4, n. 1). Therefore, Plaintiffs' Fifth Amendment claims are hereby **DISMISSED WITH PREJUDICE.**

### B. Supplemental State Law Claims

Because federal claims still remain in the case at bar, the Court will refrain from assessing Plaintiffs' supplement state law claims at this time. *See Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1176–77 (1st Cir.1995).

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' *Motion to Dismiss* (Docket No. 16). The following claims are **DISMISSED WITH PREJUDICE:**

1. Female Plaintiff Guevara and the conjugal partnership of Gil–Guevara's Section 1983 claims;

2. Plaintiffs' Section 1983 claims against the Commonwealth of Puerto Rico and all individual Defendants in their official capacity for monetary damages; and

3. All Fifth and Fourteenth Amendment claims against Defendants in their official and personal capacities.

However, Plaintiffs' First Amendment and substantive state law claims, notwithstanding Eleventh Amendment immunity, against the Commonwealth of Puerto Rico and the three individual Defendants in their official capacities for equitable and prospective injunctive relief, and against all Defendants in their individual capacities for compensation as to damages, remain viable causes of action.

**IT IS SO ORDERED.**

---

9. However, a transfer or reassignment to a more onerous position on the basis of political

affiliation is protected under the First Amendment.